**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DOUGLAS AMES,**

                                        **Plaintiff,**

          **vs.**                                                    **9:12-cv-01487**
                                                                     **(MAD/RFT)**

**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONS AND COMMUNITY SUPERVISION;**
**CORRECTION OFFICER JAMES STEVENS;**
**CORRECTION OFFICER DAVID SMITH;**
**CORRECTION OFFICER THOMAS SCHUNK;**
**CORRECTION OFFICER PATRICK MCINTYRE;**
**CORRECTION OFFICER THOMAS M. HOBART;**
**CORRECTION OFFICER SHANE KING;**
**LIEUTENANT CHRISTOPHER MCDERMOTT;**
**SERGEANT PAUL MORRIS; AND**
**CORRECTION OFFICERS JOHN DOES**
**in their individual capacities,**

                                        **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**ORRICK, HERRINGTON &**                  **J. PETER COLL, Jr., ESQ.**
**SUTCLIFFE LLP**                         **SILVIA A. BABIKIAN, ESQ.**
51 West 52 Street
New York, New York 10019
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**                **RACHEL M. KISH, AAG**
**STATE ATTORNEY GENERAL**               **ADRIENNE J. KERWIN, AAG**
Litigation Bureau
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff commenced this civil rights action in September 2012, alleging that his constitutional rights were violated while he was incarcerated at Coxsackie Correctional Facility. *See* Dkt. Nos. 1, 26.  Plaintiff alleges six claims, including that: (1) Defendant Correction Officers Stevens, Smith, Schunk, McIntyre, Hobart, and King together with Defendant Lieutenant McDermott and Defendant Sergeant Morris (collectively "Defendant Correction Officers") retaliated against him for exercising his First Amendment rights; (2) Defendants Smith, King, and Morris violated his Eighth Amendment through the use of excessive force; (3) Defendant Correction Officers conspired to deprive Plaintiff of the equal protection of the laws; (4) Defendant New York State Department of Corrections and Community Supervision ("DOCCS") should reverse disciplinary action against Plaintiff and expunge his records; (5) Defendants Smith, King, and Morris committed an assault and battery under state common law; and (6) Defendant Correction Officers violated the New York Constitution.  *See* Dkt. No. 26.  On May 1, 2014, Defendants filed a motion to dismiss and a motion for summary judgment pursuant to Rules 12(b)(6) and Rule 56(a) of the Federal Rule of Civil Procedure, respectively.  *See* Dkt. No. 48 at 1.

## II. BACKGROUND

Plaintiff was an inmate at Coxsackie Correctional Facility ("Coxsackie") from November 2007 through June 2010.  *See* Dkt. No. 48-4 at 47.[1]  During that time, he worked at the Coxsackie law library as an administrative clerk from March 31, 2008 through June 8, 2008, a paralegal assistant from June 9, 2008 through March 22, 2009, a clerk typist from July 27, 2009 through December 27, 2009, and a paralegal assistant from February 1, 2010 through June 13, 2010.  *See*

---

[1] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

Dkt. No. 48-4 at 49-50.  Plaintiff left his law library positions twice for disciplinary reasons.  *See id.*  Plaintiff received the following misbehavior reports while at Coxsackie: (1) six misbehavior reports issued by Defendant Stevens dated July 27, 2009, August 18, 2009, August 20, 2009, October 26, 2009, November 30, 2009, and December 8, 2009 (*see* Dkt. Nos. 48-4 at 71, 95, 100, 111; 48-5 at ¶ 7); (2) two misbehavior reports issued by Defendant McIntyre, both dated August 14, 2009 (*see* Dkt. No. 48-4 at 76, 83)*;* (3) one misbehavior report issued by Defendant Hobart dated August 25, 2009 (*see* Dkt. No. 48-5 at ¶ 7); (4) one misbehavior report issued by Defendant Schunk dated December 15, 2009 (*see* Dkt. No. 48-4 at 117); and (5) one misbehavior report issued by Defendant Smith dated May 17, 2010 (*see id.* at 124).

Plaintiff filed an inmate grievance complaint dated December 8, 2009 related to retaliatory misbehavior reports.  *See id.* at 20.  This grievance complaint was denied at the highest level of administrative review on March 3, 2010.  *See id.* at 19.  Plaintiff filed an inmate grievance complaint dated December 17, 2009 related to false misbehavior reports by Defendant Schunk, and it was also denied at the highest level of administrative review on February 17, 2010.  *See id.* at 23-25.  Plaintiff filed an inmate grievance complaint on January 3, 2010 related to Defendant McDermott's comments during Plaintiff's Tier II hearing on December 22, 2009.  *See id.* at 9. This complaint was denied on appeal to the highest level of administrative review on March 10, 2010.  *See id.* at 11.  Plaintiff filed an inmate grievance complaint on May 24, 2010 related to the alleged excessive use of force by Defendant Smith, and the complaint was denied at the highest level of administrative appeal on September 8, 2010.  *See* Dkt. No. 52-30 at 2.

Currently before the Court is Defendants' motion to dismiss and motion for summary judgment to dismiss this action in its entirety against all Defendants.

### III. DISCUSSION

**A.     Standard**

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim on which relief can be granted.  In order to state a sufficient claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft* 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the undisputed facts warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.

1994) (citations omitted).  "The moving party bears the burden of showing that he or she is entitled to summary judgment." *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party must identify those portions of the record which demonstrates that there is no genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Chambers*, 43 F.3d at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(c), (e)).  In assessing whether any such issues of material fact exist within the record, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *see Baum v. N. Ducthess Hosp.*, 764 F. Supp. 2d 410, 416 (N.D.N.Y. 2011).

## C.    Analysis

### 1. First Amendment Retaliation

Plaintiff claims that Defendant Correction Officers unlawfully retaliated against him for exercising his constitutional rights to file grievances, provide legal assistance to inmates, and

write complaints reporting abuse of other inmates and, therefore, violated his First Amendment rights. *See* Dkt. No. 26 at ¶¶ 85-89. Plaintiff claims that Defendant Correction Officers retaliated by filing false misbehavior reports, useing excessive force, and making verbal threats. *See* Dkt. No. 26 at ¶¶ 38, 45, 47, 49-51, 53-56, 58, 60-61, 66-67, 74. Defendants move to dismiss these claims under Rule 12(b)(6) and, ostensibly, under Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 48. Defendants make three arguments that, as a matter of law, Plaintiff's claims of retaliation fail. Defendants argue that there is not a constitutional right to be free from false misbehavior reports, that the legal assistance provided by Plaintiff to other inmates is not protected speech, and that it is speculative that the misbehavior reports are causally connected to Plaintiff's protected speech or conduct. *See* Dkt. No. 48-1 at 8.

Initially, the Court notes that prisoner claims for First Amendment retaliation are approached "with skepticism and particular care" because the claims are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (acknowledging that "virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act"). To state a claim of First Amendment retaliation, the plaintiff must show he engaged in constitutionally protected speech or conduct, that the defendant took an adverse action against him, and that there is a causal connection between the two. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *Dawes*, 239 F.3d at 492.

Not every act engaged in by a plaintiff qualifies as constitutionally-protected speech or conduct. *See Coleman v. Beale*, 636 F. Supp. 2d 207, 211 (W.D.N.Y. 2009) (stating that general advice to another inmate on the mechanics of an appeal was not constitutionally protected conduct); *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008). However, the

filing of a grievance by a prisoner against correction officers is conduct and speech that is

constitutionally "protected by the First Amendment's guarantee of the rights to free speech and to

petition the government for a redress of grievances." *Coleman*, 636 F. Supp. 2d at 211; *see Davis*

*v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003). Also, a prisoner's statement that he or she intends

to file a grievance is constitutionally protected speech. *See Coleman*, 636 F. Supp. 2d at 211.

     Although Defendants conclude that providing legal assistance to other inmates is not

constitutionally protected conduct, this Court has held otherwise. *See Anderson v. Lapolt*, No.

9:07-CV-1184, 2009 WL 3232418, *7-8 (N.D.N.Y. Oct. 1, 2009) (finding that the plaintiff stated

a facially valid retaliation claim where the protected speech alleged was the authorized legal

assistance provided to other inmates); *Auleta v. LaFrance*, 233 F. Supp. 2d 396, 399-402

(N.D.N.Y. 2002) (stating that the plaintiff had standing to argue that retaliatory acts taken against

him were unconstitutional even though the acts interfered with another inmate's right to petition

the courts). Accordingly, Plaintiff's retaliation claim based upon his protected act of providing

legal assistance to other inmates is not legally insufficient.

     The adverse action taken in retaliation against Plaintiff must be the type of action "that

would deter a similarly situated individual of ordinary firmness from exercising his or her

constitutional rights." *Davis*, 320 F.3d at 353 (quoting *Dawes*, 239 F.3d at 493); *see also Gill*,

389 F.3d at 381 (clarifying that adverse action in the prison context is defined objectively).

Defendants argue that, as a matter of law, Plaintiff does not have a constitutional right to be free

from false misbehavior reports. *See* Dkt. No. 48-1 at 6. While Defendants are generally correct

on the face of this statement, it is not determinative in the context of a First Amendment

retaliation claim. *See Lee v. O'Harer*, No. 9:13-CV-1022, 2014 WL 7343997, *7 (N.D.N.Y. Dec.

23, 2014) (stating that "[a]ny adverse action taken by [the] defendant in retaliation for the

exercise of a constitutional right . . . states a viable constitutional claim").  There is no requirement that the retaliatory act rise to the level of a constitutional violation and, therefore, Defendants' contention that Plaintiff does not have a constitutional right to be free from false misbehavior reports does not have any bearing on whether Defendants unlawfully retaliated against Plaintiff.  *See Davis*, 320 F.3d at 352; *Dawes*, 239 F.3d at 491 (citing *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)).

The causal nexus between the protected speech or conduct and the retaliation must be specifically pleaded.  *See Dolan v. Connolly*, No. 13 Civ. 5726, 2014 WL 1876524, *10 (S.D.N.Y. May 8, 2014), report and recommendation adopted by 2014 WL 3057973 (S.D.N.Y. June 27, 2014).  The "allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'"  *See Davis*, 320 F.3d at 354 (quoting *Dawes*, 239 F.3d at 492).  Several factors have previously been used to evaluate whether a causal nexus has been sufficiently pleaded, which include the following: "'(1) the temporal proximity between the plaintiff's protected activity and the defendant's adverse action, (2) the prior disciplinary records of the inmate, (3) the outcomes of any hearings regarding the allegedly retaliatory charges, and (4) any statements defendant makes concerning his motive.'"  *Dolan*, 2014 WL 1876524, at *10 (quoting *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 444 (S.D.N.Y. 2006); *see also Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995).

Here, Plaintiff has failed as a matter of law to sufficiently state First Amendment retaliation claims against Defendants Smith, King, and Morris.  Plaintiff contends that, on May 17, 2010, Defendant Smith used excessive force against him and that Defendants King and Morris were present.  *See* Dkt. No. 26 at ¶¶ 71-74.  Plaintiff alleges "[u]pon information and belief, C.O. Smith was acting on behalf of C.O. Stevens, and also to prevent [Plaintiff] from engaging in the

activities of a jailhouse lawyer" by using excessive force and filing a misbehavior report on May 17, 2010.  *See id*.  Plaintiff does not make any similar allegations of retaliation by Defendants King or Morris and, therefore, failed to state claims against them.  *See id.*  Plaintiff's allegation that Defendant King said, "If it was me I would have beat you up worse," as he was escorting Plaintiff to the hospital is also insufficient to state a valid retaliation claim.  *See Islam v. Goord*, No. 05 Civ. 7502, 2006 WL 2819651, *5 (S.D.N.Y. Sept. 29, 2006) (stating that verbal threats are not sufficient retaliatory acts); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005).  The Court dismisses the claims of First Amendment retaliation against Defendants King and Morris.

Plaintiff's claim that, upon his belief, Defendant Smith was acting on behalf of Defendant Stevens is entirely speculative, and Plaintiff does not offer any further support for this belief.  *See* Dkt. No. 26 at ¶ 74.  There are no allegations that Defendants Smith and Stevens had communicated about Plaintiff prior to May 17, 2010.  Further, Plaintiff did not specify a protected act that Defendant Smith was retaliating against.  *See Dolan*, 2014 WL 1876524, at *9.  The Court finds that the facts, as alleged, are insufficient to establish an inference that Defendant Smith acted in retaliation of Plaintiff's grievances against Defendant Stevens.

Plaintiff also claims that, upon information and belief, Defendant McIntyre retaliated against Plaintiff for filing grievances against Defendant Stevens by filing false misbehavior reports against him twice on August 14, 2009.  *See* Dkt. No 26 at ¶ 47.  Plaintiff does not provide any further facts about Defendant McIntyre's motivation or knowledge related to Defendant Stevens.  *See id.*  Plaintiff also does not reference any dates of protected speech or conduct related to Defendant McIntyre's alleged retaliation.  *See id.*  Likewise, Plaintiff claims that Defendant Hobart issued a misconduct report on August 25, 2009.  *See id.* at ¶ 53.  Allegedly, Defendant Hobart said to Plaintiff, "Officer Stevens told me to write you up, so I did."  *See id.*  No further

context for this statement was provided by Plaintiff.  Even assuming that Defendant Hobart made

that statement, the Court finds it does not establish a causal connection where Plaintiff has not

identified any specific grievance or other speech that Defendant McIntyre was retaliating against.

*See Dolan*, 2014 WL 1876524, at *9.  The Court finds that the amended complaint against

Defendants McIntyre and Hobart failed to plead a specific protected act or any causal connections

between Plaintiff's protected speech or conduct and the filing of misconduct reports by

Defendants McIntyre and Hobart.

Although it is not raised in Defendants' motion, the Court *sua sponte* finds*,* in the

alternative, that Plaintiff's claims against Defendants McIntyre and Hobart are barred by the

three-year statute of limitations applicable to First Amendment retaliation actions under Section

1983 in New York.  *See Smith v. New York City Dep't of Educ.*, 524 Fed. Appx. 730, 732 (2d Cir.

2013)*.*  The dates of the alleged retaliatory conduct, August 14, 2009 and August 25, 2009, and

the dates of the hearings, August 24, 2009 and September 9, 2009, are all outside of three years

from September 28, 2012, the commencement of this action (*see* Dkt. No. 1).  *See Smith*, 524 Fed.

Appx. at 732.  Defendants McIntyre and Hobart each filed one misconduct report against

Plaintiff.  *See* Dkt. No. 26 at ¶¶ 47, 53.  Each of these retaliatory acts, as alleged, were discrete

actions, and there is no basis to apply the continuing violation doctrine.  *See Smith*, 524 Fed.

Appx. at 732.

As for Plaintiff's First Amendment retaliation claims against Defendants Schunk and

McDermott, the Court finds that the amended complaint plausibly alleges these claims.  Plaintiff

alleges that, on December 15, 2009, inmate Dashawn Andrews was being beaten in an adjacent

cell.  *See* Dkt. No. 26 at ¶ 59.  When Defendant Schunk walked past, Plaintiff told him that he

intended to write a complaint to the inspector general about the abuse.  *See id.*  A statement of

intention to write a complaint has been found to be protected speech.  *See Coleman*, 636 F. Supp.

2d at 211 (stating that the intention to file a grievance was constitutionally protected speech).

Plaintiff contends that in retaliation for stating his intention to complain to the inspector general

about inmate abuse, Defendant Schunk filed a misbehavior report against him.  *See id.* at ¶ 60.

On December 17, 2009, Defendant McDermott presided over Plaintiff's Tier II hearing.  *See id.*

Plaintiff was sentenced to thirty days of keeplock.  *See id.*  Plaintiff asked Defendant McDermott

why he was being punished based upon false reports, and Defendant McDermott allegedly

replied, "That's what happens when you talk to I.G. about my officers."  *See id.* at ¶ 61.  Contrary

to the Defendants' contentions, the Court finds that Plaintiff has alleged facts to identify specific

protected speech, retaliatory actions of Defendants Schunk and McDermott, and a causal

connection between Plaintiff's speech and those Defendants' actions.  Further, Defendants are not

entitled to summary judgment because material questions of fact exist as to Plaintiff's retaliation

claim against Defendants Schunk and McDermott.

 Plaintiff claims that Defendant Stevens was the main actor in retaliating against him.  *See*

Dkt. No. 26 at ¶ 3.  Plaintiff claims that Defendant Stevens retaliated against him for filing

grievances on his own behalf and the legal assistance he provided to other inmates.  *See id.*  As

addressed above, Defendants unsuccessfully argue on their motion to dismiss that Plaintiff does

not have a constitutional right to be free from false misbehavior reports and that providing legal

assistance to other inmates is not constitutionally protected speech as a matter of law.

Defendants' final argument as to Defendant Stevens is that the causal connection between

Defendant Stevens misbehavior reports and Plaintiff's protected conduct is speculative.  *See* Dkt.

No. 48-1 at 6.

While Plaintiff is correct that the filing of grievances on his own behalf is a protected First Amendment right (*see Davis*, 320 F.3d at 352-353), Plaintiff has failed to state or identify any specific grievances that he has filed on his own behalf prior to the start of Defendant Stevens retaliatory conduct on July 27, 2009 through December 8, 2009.  Plaintiff briefly references that Defendant Stevens was the subject of an earlier grievance filed by Plaintiff but no other facts about dates or allegations of the grievance were alleged.  *See* Dkt. No. 26 at ¶¶ 3, 36.  There are also no other references to any grievances filed by Plaintiff in the record until his grievance dated December 8, 2009, which is after Defendant Stevens alleged retaliatory conduct had ceased.  *See* Dkt. No. 26 at ¶ 79.  The Court finds that Plaintiff has not identified a grievance on his own behalf that could have caused Defendant Stevens' retaliatory conduct.  The causal connection between the filing of an unidentified and undated grievance to six false misbehavior reports is too speculative to plausibly state a retaliation claim.  *See Lee*, 2014 WL 7343997, at *9 (stating that "[i]t is impossible for [the defendant] to retaliate for a grievance that would not be filed for six days"); *Dolan*, 2014 WL 1876524, at *9.  That part of Plaintiff's retaliation claim against Defendant Stevens is dismissed.

However, Plaintiff claims that he assisted another inmate with filing a grievance against Defendant Stevens in the Summer of 2009, which was an instigating factor for Defendant Stevens to file six misconduct reports against Plaintiff between July 27, 2009 and December 8, 2009.  *See* Dkt. No. 26 at ¶¶ 3, 33, 36, 43, 58.  Plaintiff also claims that Defendant Stevens interfered with the legal assistance that he was providing to another inmate in the law library on August 20, 2009.  *See* Dkt. No. 26 at ¶ 51.  This providing legal assistance also contributed to Defendant Stevens' retaliatory conduct, according to the amended complaint.  *See* Dkt. No. 26 at ¶¶ 51, 54-58.  The Court finds that Plaintiff has plausibly alleged Defendant Stevens retaliated against him for

providing legal assistance to other inmates. Defendants do not make any argument that summary judgment should be granted to Defendant Stevens and, thus, Defendants failed to meet their burden in establishing that there are no material questions of fact that relate to Defendant Stevens' alleged retaliation. *See* Fed. R. Civ. P 56(a), (c).

### 2. Eighth Amendment

Defendants seek to have Plaintiff's claim for violation of the Eighth Amendment dismissed because Plaintiff failed to exhaust his claim as required by the Prison Litigation Reform Act of 1996 ("PLRA"). *See* Dkt. No. 48-1 at 12-15. The PLRA "requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action." *Brooks v. Rock*, No. 9:11-cv-1171, 2014 WL 1292232, *8 (N.D.N.Y. Mar. 28, 2014). Grievance No. CX-15885-110 for an assault that allegedly took place on May 17, 2010 was denied by the Inmate Grievance Program Central Office Review Committee ("CORC") on September 8, 2010. *See* Dkt. No. 52-30 at 2. This final determination by the CORC on Plaintiff's grievance was the final step in the exhaustion process. *See* Dkt. No. 52-20 at 14. Moreover, as it relates to the exhaustion of administrative remedies, it is of no consequence that Defendants King and Morris were not specifically named within Plaintiff's grievance. *See Varela v. Demmon*, 491 F. Supp. 2d 442, 449 (S.D.N.Y. 2007). The Court finds that Plaintiff has exhausted his administrative remedies under the PRLA.

Substantively, Plaintiff contends that Defendants Smith, King and Morris used excessive force against him in violation of the Eighth Amendment. *See* Dkt. No. 26 at ¶¶ 90-94. The Eighth Amendment prohibits cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). As applied to claims of excessive force, the Supreme Court has stated that the appropriate inquiry is "whether the measure taken inflicted unnecessary and wanton pain and suffering."

*Whitley v. Albers*, 475 U.S. 312, 320 (1986) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see Hudson*, 503 U.S. at 5. To state a claim for use of excessive force, Plaintiff must establish both an objective and a subjective component as set forth by the courts. *See Hudson*, 503 U.S. at 8; *Brooks*, 2014 WL 1292232, at *13.

The subjective component evaluates the wantonness of the force used and "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 321 (quoting *Johnson*, 481 F.2d at 1033); *see Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). There are several factors that may be consider when evaluating the nature of a correction officer's use of force, including (1) the need for the application of force, (2) the relationship between that need and the force actually used, (3) the severity of the injury sustained, (4) the threat that could reasonably be perceived by the correction officer, and (5) if there was any effort to temper the severity of the force use. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

The objective component asks "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To determine whether an action is harmful enough to violate the Eighth Amendment, we must look to the "'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson*, 503 U.S. at 9 (quoting *Wilson*, 501 U.S. at

298).  "[T]he Eighth Amendment [] . . . does not extend to *'de minimis'* uses of physical force,

provided that the use of force is not of a sort repugnant to the conscience of mankind.'"  *See Sims*

*v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (quoting *Hudson*, 503 U.S. at 10 (internal quotations and

citations omitted).

 Weighing all facts and drawing all inferences in Plaintiff's favor, the record supports a

reliable inference of wantonness and unnecessary infliction of pain.  According to Plaintiff's

testimony, Defendant Smith came to retrieve and escort Plaintiff to the deputy superintendent on

May 17, 2010.  *See* Dkt. Nos. 26; 48-3 at 101.  Plaintiff and another inmate were being escorted

together to a common area to be frisked for weapons.  *See* Dkt. No. 48-3 at 103.  Correction

Officer Bogardis, Defendant King, Defendant Morris, and two other unknown officers were

present in this common area, although these individuals were all seated around a desk and not in

the immediate area in front of or behind Plaintiff.  *See id.* at 104, 108, 112.  Defendant Smith put

his hand in front of Plaintiff's face and said, "Next time you hurry up.  You too slow."  *See id.* at

104.  In a loud voice, Plaintiff told Defendant Smith, "Get your hand out of my face," and

Defendant Smith replied, "You lucky that's all I'm doing."  *See id.* at 105.  As described by

Plaintiff, either simultaneous with or shortly after his statement to Defendant Smith, Plaintiff

raised both hands, turned, and took two steps away from him.  *See id.* at 104, 106.  Defendant

Smith then landed one, closed-fisted punch to the side of Plaintiff's head and took Plaintiff face

down to the ground in a bear hug.  *See id.* at 104, 107, 110.

 While holding Plaintiff down flat with his knee on the small of the back, Defendant Smith

was given handcuffs from Defendant Morris.  *See id.* at 110.  Plaintiff's arms were pulled behind

him and handcuffed by Defendant Smith.  *See id.*  After Plaintiff was handcuffed, Defendant

Smith said, "Take that to federal court."  *See id.*  Plaintiff did not sustain any further physical

assault or battery. *See id.* at 110-11. No other correction officer moved or caused injury to him throughout the incident. *See id.* Plaintiff described that the force of the hit was painful when it occurred, but he did not have any residual pain, bruising, or swelling. *See id.* at 117. Pursuant to protocol, Plaintiff was brought for a medical evaluation because there was force used against an inmate, but he told the nurse that he was not injured and did not require any medical treatment. *See id.* at 116-17. Defendant Smith testified that Plaintiff abruptly swung his left hand and arm toward Defendant Smith at head level, and, in reaction, Defendant Smith moved his head backwards and struck Plaintiff. *See* Dkt. No. 52-23 at 8. The movement of Plaintiff's hand was fast enough that Defendant Smith perceived that Plaintiff was attempting to strike him. *See id.* at 9.

After an examination of the relevant factors to assess if Defendant Smith acted with malicious and sadistic intent to harm Plaintiff, the Court finds that there is a material question of fact to be determined by a jury. The event described by Plaintiff supports a reasonable inference that Defendant Smith acted with sadistic and malicious intent, and, accordingly, Defendants' motion for summary judgment dismissing this claim must be denied. *See Whitley*, 475 U.S. at 322 (stating that the evidence must "support a reliable inference of wantonness in the infliction of pain" to go to a jury); *Brooks*, 2014 WL 1292232, at *14.

Additionally, Defendants argue that Plaintiff has not alleged Defendant King used any force against Plaintiff. The Court agrees with Defendants. Plaintiff does not allege any force-related actions by Defendant King in his amended complaint or during his deposition testimony describing the events on May 17, 2010. *See* Dkt. Nos. 26; 48-3. According to Plaintiff's alleged facts, Defendant King escorted Plaintiff for medical evaluation and said, "Yeah, if it was me, I would have beat you up worse." *See* Dkt. Nos. 26; 48-3 at 112. Actions brought under Section

1983 require personal involvement of the defendant "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights." *Blyden*, 186 F.3d at 264. Plaintiff does not allege that Defendant King ever personally used force against Plaintiff and, therefore, the Court finds that Plaintiff fails to state a cause of action against Defendant King for excessive use of force in violation of the Eighth Amendment. *See Montero v. Crusie*, 153 F. Supp. 2d 368, 375-76 (S.D.N.Y. 2001).

Defendants argue that Plaintiff has also failed to allege facts that Defendant Morris used any force against Plaintiff on May 17, 2010. *See* Dkt. No. 48-1. In opposition, Plaintiff claims that Defendant Morris' personal involvement related to his role as a supervisor. *See* Dkt. No. 52. Defendant Morris was a sergeant in May 2010 and was the direct supervisor of Defendants Smith and King on May 17, 2010. *See* Dkt. No. 52-25 at 22-24. Defendant Morris was on the other side of the room (approximately twenty by thirty feet in size) from where Defendant Smith used force against Plaintiff. *See id.* at 54, 57, 76. Defendant Morris does not have any specific recollection of the use of force. *See id.* at 50-64.

A supervisory official may not be held liable solely on the ground that they held a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citation omitted). However, supervisory personnel may satisfy the personal involvement requirement if:

> (1) The defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

Personal involvement is a question of fact and must be satisfied as to each individual defendant. *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (citation omitted). "A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation." *Rivera v. Fischer*, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009). By Plaintiff's factual account, Defendant Morris did not have any direct involvement in the actual punch by Defendant Smith, (*see* Dkt. No. 48-3 at 110) and Plaintiff does not direct the Court to any support in the record that there was a custom or policy of practice created by Defendant Morris or gross negligence in his management of Defendant Smith that was related to the use of force. Plaintiff does not allege that Defendant Morris gave authorization for Defendant Smith's use of force. *See Johnson*, 481 F.2d at 1034. Further, a single incident of excessive force is not the type of wrong that could be remedied by Defendant Morris after a report. *See, e.g.*, *United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 588-89 (2d Cir. 1974) (finding a question of fact as to whether the defendant should have known the plaintiff was unlawfully confined and failed to act). Therefore, the Court also finds that Plaintiff failed to state a claim of excessive force against Defendant Morris, directly or as a supervisor of Defendant Smith.

### 3. 42 U.S.C. § 1985(3)

Plaintiff's third cause of action is against Defendant Correction Officers for a conspiracy to deprive Plaintiff of the equal protection of the laws under 42 U.S.C. § 1985(3).

> To state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege four elements: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'

18

*Dolan*, 2014 WL 1876524, at *12 (quoting *United Bhd. of Carpenters and Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)); *see Vega v. Artus*, 610 F. Supp. 2d 185, 204 (N.D.N.Y. 2009). To state a sufficient claim on the second element, "[t]he conspiracy must be motivated by racial or related class-based discriminatory animus." *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996); *see Vega*, 610 F. Supp. 2d at 204; *Martin v. New York State Dep't of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (explaining that the Supreme Court defined the language of requiring intent to deprive of the equal protection of the laws to mean "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971))). "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Vega*, 610 F. Supp. 2d at 204 (quoting *Martin*, 115 F. Supp. 2d at 316 (internal quotations omitted)). "'[T]he statute should extend beyond its racial boundaries only when a class has been afforded suspect or quasi-suspect classification or when Congress has provided the class special protection.'" *Vega*, 610 F. Supp. 2d at 204 (quoting *Martin*, 115 F. Supp. 2d at 316).

In the present case, Plaintiff asserts that the conspiracy against him was motivated by his status as a jailhouse lawyer, which he claims is a class that has been subject to discriminatory class-based animus. *See* Dkt. No. 26 at ¶¶ 97-98. The courts have previously determined that the class of jailhouse lawyers is not a protected class under 42 U.S.C. § 1985(3). *See Dolan*, 2014 WL 1876524, at *13 (citing *Webster v. Fischer*, 694 F. Supp. 2d 163, 196 (N.D.N.Y. 2010), *aff'd*, 398 Fed. Appx. 683 (2d Cir. 2010)). Plaintiff has failed to make out a prima facie conspiracy case under 42 U.S.C. § 1985(3) because jailhouse lawyers are not a protected class.

Alternatively, the Court finds that Plaintiff's § 1985(3) conspiracy claim is barred by the intra-corporate conspiracy doctrine. The intra-corporate conspiracy doctrine, which applies to

conspiracy claims pursuant to 42 U.S.C. § 1985, *see Herrmann v. Moore*, 576 F.2d 453, 459 (2d

Cir. 1978), "posits that officers, agents, and employees of a single corporate or municipal entity,

each acting within the scope of his or her employment, are legally incapable of conspiring with

each other." *Jefferson v. Rose*, 869 F. Supp. 2d 312, 317-18 (E.D.N.Y. 2012) (quotations and

citations omitted); *see also Smith v. Town of Hempstead Department of Sanitation Sanitary

District No. 2*, 798 F. Supp. 2d 443, 461 (E.D.N.Y. 2011) (citation omitted). The intra-corporate

conspiracy doctrine "extends to public corporate bodies, including municipalities." *Nimkoff v.

Dollhausen*, 751 F. Supp. 2d 455, 466 (E.D.N.Y. 2011) (citation omitted); *see also Vega*, 610 F.

Supp. 2d at 206 (holding that the intra-corporate conspiracy doctrine applies to DOCCS

employees). Here, the Defendant Correction Officers were all employees of DOCCS during the

relevant time periods, and, accordingly, the Court dismisses this claim. *See* Dkt. Nos. 52-5 at 11;

52-6 at 14; 52-9 at 8; 52-17 at 7; 52-23 at 14; 52-21 at 16-17; 52-25 at 6-7.

### 4. 11th Amendment

In Plaintiff's fourth cause of action, he seeks declaratory relief from Defendant DOCCS

only. *See* Dkt. No. 26 at ¶ 102. Specifically, Plaintiff seeks to have those disciplinary actions

taken against him, set forth in his complaint, reversed and expunged from his records. *See id*.

The Eleventh Amendment, as interpreted by the Supreme Court, provides that states and their

agencies may not be sued by private individuals in federal court for damages or injunctive relief

without their consent. *See Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001);

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984); *Alabama v. Pugh*, 438

U.S. 781, 782 (1978); *Kozaczek v. New York Higher Educ. Servs. Corp.*, No. 1:10-cv-107, 2011

WL 3687379, *2 (D. Vt. Aug. 23, 2011) (stating that a claim against a state agency is barred by

the Eleventh Amendment because the state is the real party in interest). Defendant DOCCS is a

New York State agency that has immunity under the Eleventh Amendment. *See Rother v. Dep't of Corr. and Cmty. Supervision*, 970 F. Supp. 2d 78, 89-90 (N.D.N.Y. 2013).

Plaintiff maintains that Defendant DOCCS has waived its sovereign immunity by engaging in affirmative conduct during litigation, including producing witnesses, engaging in substantial discovery, and answering interrogatories. *See* Dkt. No. 52 at 19-20. Certainly, states may waive their privilege to Eleventh Amendment immunity by voluntarily appearing in this Court or making a "clear declaration" that it submits to this Court's jurisdiction. *See Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999); *Close v. State*, 125 F.3d 31, 36 (2d Cir. 1997); *Rother*, 970 F. Supp. 2d at 90. There was no such affirmative action taken by Defendant DOCCS in this case. To the contrary, Defendant DOCCS asserted their Eleventh Amendment immunity as an affirmative defense within their answers. *See* Dkt. Nos. 25, 32.

To establish waiver by litigation, as alleged by Plaintiff, Defendant DOCCS had to engage in litigation conduct that would require the Court to find a waiver "'to avoid inconsistency, anomaly, and unfairness.'" *In re Charter Oaks Assocs.*, 361 F.3d 760, 767 (2d Cir. 2004) (quoting *Lapides v. Bd. of Regents of the Univ. Sys.*, 535 U.S. 613, 620 (2002). Defendant DOCCS appearance in this action and engagement in litigation does not impliedly waive its Eleventh Amendment immunity. *See Conrad v. Perales*, 92 F. Supp. 2d 175, 183-85 (W.D.N.Y. 2000). The declaratory relief sought by Plaintiff from Defendant DOCCS is barred, and the Court dismisses this claim for lack of subject matter jurisdiction.

### 5. State common-law and state constitutional claims

Plaintiff asserts a claim for assault and battery under New York common law against Defendants Smith, King, and Morris, as well as claims for violations of the New York State

Constitution against Defendants Stevens, Smith, Schunk, McIntyre, Hobart, King, McDermott, and Morris. *See* Dkt. No. 26 at ¶¶ 103-08. Defendants argue that all of Plaintiff's state law claims against Defendant Correction Officers in their individual or personal capacities are barred pursuant to New York Correction Law § 24. *See* Dkt. No. 48 at 10-11.

In pertinent part, the New York statute provides that:

> 1. No civil action shall be brought in any court of the state . . . against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correction Law § 24. It is well settled that when this Court exercises pendent jurisdiction over a state cause of action, it must apply the substantive state law. *See Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (citations omitted) (explaining that the plaintiff's state law claims must be dismissed because "a federal court acts essentially as a state court in addressing pendent state law claims"); *Parris v. New York State Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013); *Joy v. State*, No. 5:09-CV-841, 2010 WL 3909694, *4 (N.D.N.Y. Sept. 30, 2010). Section 24 of New York Correction Law governs substantive rights; it is not procedural. *See Baker*, 77 F.3d at 15; *Joy*, 2010 WL 3909694, at *4 (stating New York Correction Law § 24 is still viable as to state causes of action in federal court despite being found to be in violation of the Supremacy Clause as it relates to Section 1983 claims).

In opposition to Defendants' motion, Plaintiff argues that this statute does not offer immunity protection in this case because Defendants' acts were not performed within the scope of

their employment. *See* Dkt. No. 52 at 24-25. The Court does not agree. An employee's actions are deemed to be within the scope of their employment when "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (citations omitted) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979)) (explaining that even where employees "exhibit human failings and perform negligently or otherwise than in an authorized manner," their actions do not necessarily excuse an employer under the doctrine of respondeat superior).

For purposes of New York Correction Law § 24, the courts have looked to the following factors to determine whether actions fall within the actor's scope of employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Ierardi*, 119 F.3d at 187 (quoting *Riviello*, 47 N.Y.2d at 303).

In the present case, Defendant Correction Officers were employed by DOCCS, and Plaintiff does not claim that any encounters at issue took place while any Defendants were not on duty as correction officers. *See* Dkt. No. 26. The actions of writing misbehavior reports and controlling the movements of prisoners fall squarely within Defendants' responsibilities of "maintaining order and security in correctional facilities and protecting the safety of inmates and employees." *Arteaga v. State*, 72 N.Y.2d 212, 217 (1988); *see also Crump v. Ekpe*, No. 9:07-CV-1331, 2010 WL 502762, *18 (N.D.N.Y. Feb. 8, 2010). The alleged inappropriate filing of misconduct reports and excessive use of force during the movement of Plaintiff within the facility were not departures great enough to remove Defendant Correction Officers' actions from within the scope of their employment. *See Cepeda v. Coughlin*, 128 A.D.2d 995, 996 (3d Dep't 1987);

23

*Deal v. Yurack*,  No. 9:04-CV-0072, 2007 WL 2789615, *10 (N.D.N.Y. Sept. 24, 2007); *Crump*,

2010 WL 502762, at *18.  Likewise, these actions, as alleged, are generally foreseeable in the

execution of Defendant Correction Officers' duties.  *See Riviello*, 47 N.Y.2d at 304 (stating that

where the tortious conduct is a natural incident of employment, it can be generally foreseeable);

*Cepeda*, 128 A.D.2d at 996.  "While they may allege constitutional deprivations and actions

exceeding the scope of a correction[] officer's authority, these types of claims have consistently

been treated as giving rise to immunity from suit for pendent state law claims against correction[]

officers in their individual capacities."  *Crump*, 2010 WL 502762, at *18.  The Court finds that

Plaintiff's pendent state claims are barred by New York Correction Law § 24.  Accordingly, the

Court dismisses these claims for lack of subject matter jurisdiction.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 48) is **GRANTED**

with regard to (1) Plaintiff's Eighth Amendment claim of malicious use of force against

Defendants King and Morris, (2) Plaintiff's claim for conspiracy to deprive Plaintiff of the equal

protection of the laws under 42 U.S.C. § 1985(3), (3) Plaintiff's claim for declaratory relief

against Defendant DOCCS, (4) Plaintiff's claim for assault and battery under New York common

law, (5) Plaintiff's claim for violations of the New York Constitution, and (6) Plaintiff's First

Amendment Retaliation claim against Defendants Smith, McIntyre, Hobart, King, and Morris;

and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 48) is **DENIED** with

regard to (1) Plaintiff's Eighth Amendment claim of malicious use of force against Defendant

Smith and (2) Plaintiff's First Amendment retaliation claim against Defendants Stevens, Schunk, and McDermott;[2] and the Court further

**ORDERS** that the following claims are **DISMISSED with prejudice** from this action: (1) Plaintiff's Eighth Amendment claim of malicious use of force against Defendants King and Morris, (2) Plaintiff's claim for conspiracy to deprive Plaintiff of the equal protection of the laws under 42 U.S.C. § 1985(3), (3) Plaintiff's claim for declaratory relief against Defendant DOCCS, (4) Plaintiff's claim for assault and battery under New York common law, (5) Plaintiff's claim for violations of the New York Constitution, and (6) Plaintiff's First Amendment Retaliation claim against Defendants Smith, McIntyre, Hobart, King, and Morris; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 23, 2015
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[2] Plaintiff's case continues against Defendants Stevens, Schunk, McDermott, and Smith.